UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANILO LOPES SANTANA (A-Number: 201-678-151), | Case No. 1:26-cv-0915-DJC-JDP |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| DAVID MARIN, *et al.*, | |
| Respondents. | |

Petitioner Danilo Lopes Santana entered the United States in 2019 and was detained by ICE in 2026. Since his detention, petitioner has not received a bond hearing; the government has determined that he is subject to mandatory detention. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention is not mandatory. For the following reasons, I recommend that the petition be granted and that petitioner be provided a bond hearing.

**Background**

Petitioner "entered the United States without inspection approximately seven years ago and was not apprehend upon arrival."[1] ECF No. 13 at 2; *see also* ECF No. 8 at 2. Petitioner is pursuing asylum. ECF No. 8 at 4.

On January 3, 2026, petitioner was arrested in Massachusetts after allegedly threatening

---

[1] Respondents reference "[p]etitioner's prior release in the discretion of DHS," and petitioner states that he "was previously released from immigration detention under order of own recognizance." *See* ECF No. 7 at 2; ECF No. 11 at 2. There is no other evidence in the record, however, of petitioner previously interacting with immigration officials. Moreover, the amended petition does not allege a violation of petitioner's constitutional due process rights. *See* ECF No. 13. Accordingly, I do not address the due process implications if petitioner has, in fact, been re-detained after being released on his own recognizance.

1

his ex-wife with a knife.  ECF No. 13 at 12-13; ECF No. 18-2.  He was subsequently charged with two counts of assault and one count of threatening to commit a crime.  ECF No. 18-2 at 7.  Those charges remain pending.

That same day, petitioner was transferred to ICE custody.  ECF No. 7 at 2.  On two occasions since, petitioner has requested a custody redetermination pursuant to 8 C.F.R. § 1236; each time, the immigration court has determined that it lacks jurisdiction because petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  *See* ECF No. 8-2 at 2; ECF No. 18-1 at 2.  Consequently, petitioner has been denied a bond hearing.  *See id*.

### Procedural History

On February 2, 2026, petitioner filed a petition for writ of habeas corpus.  ECF No. 1.  Shortly thereafter, petitioner filed a motion for a temporary restraining order, which the court denied.  *See* ECF No. 7 & 12.  On February 18, 2026, petitioner filed an amended petition.  ECF No. 13.  On February 28, 2026, respondents filed an answer to the petition.  ECF No. 16.  On March 2, 2026, petitioner filed a traverse.  ECF No. 17.  On March 13, 2026, petitioner filed a motion to expedite the adjudication of the amended petition.  ECF No. 18.

### Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a) and that he is not subject to mandatory detention under either 8 U.S.C. § 1226(c) or 1225(b)(2).[2] ECF No. 13 at 3-5. Respondents counter that petitioner's detention is mandatory under both applicable sections. ECF No. 11 at 1-3. I address each section in turn.

**I.    1226(c)**

Under section 1226(c), the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[3]  8 U.S.C. § 1226(c)(1)(E)(ii). The term "serious bodily injury" has the meaning given such term "in the jurisdiction in which the acts occurred." *Id*. § 1226(c)(2). In Massachusetts—where petitioner was arrested and charged—a "serious bodily injury" means a "bodily injury that results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death." *See* Mass. Gen. Laws Ann. ch. 265, §§ 13A, 13K, 15A, 15D.

Here, respondents argue that petitioner is subject to mandatory detention under section 1226(c) because he "was arrested for Assault on Family/Household Member, Threat to Commit a Crime[,] and Assault with Dangerous Weapon" which are crimes "involving serious bodily injury to another person." ECF No. 11 at 2. Petitioner counters that those crimes did not involve "serious bodily injury." ECF No. 13 at 4.

_____

[2] Petitioner argues that he is an eligible member of the class in *Bautista v. Santacruz*, which includes "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *See* No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025).

[3] The statute also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7).  8 U.S.C. § 1226(c)(1)(E)(i). Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A). *See* 8 U.S.C. § 1182(a)(6)(A)(i).

There is no evidence that petitioner's alleged crime resulted in bodily injury. The arrest report, as noted, indicates that petitioner threatened to harm his ex-wife with a knife. ECF No. 18-2 at 9. Petitioner's ex-wife also reported that petitioner had been following her around, and she told the arresting officers about a previously unreported incident in which petitioner broke into her house, destroyed her property, and threatened to kill her with a knife. *See id*. There is no indication in the arrest report, however, that petitioner caused bodily harm to his ex-wife or any other individual. Respondents rely solely on the report and do not introduce any other evidence. *See* ECF No. 11 at 2. As such, there is no evidence or allegation that petitioner caused a bodily injury, much less a bodily injury resulting "in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death."[4] *See* Mass. Gen. Laws Ann. ch. 265, § 13A.

Accordingly, petitioner is not subject to mandatory detention under section 1226(c).

**II.      1225(b)(2)**

Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the

---

[4] No other provision of 1226(c) applies to petitioner, particularly because there is no evidence that he has admitted to or been convicted of committing a crime. *See* 8 U.S.C. § 1226(c)(1)(A)-(D).

Department of Homeland Security ("DHS") revisited its legal position and now maintains that "all applicants for admission within the meaning of 8 U.S.C. 1225(a) are subject to mandatory detention under 8 U.S.C. 1225(b)." *See* ECF No. 11 at 2 n.2. Respondents urge the court to follow suit and find that petitioner is subject to mandatory detention under 1225(b)(2). *Id*. at 1-2. *Id*. Petitioner counters that he is subject to discretionary detention under section 1226(a). ECF No. 13 at 5.

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2).

The government urges the court to read section 1225(b)(2)(A) as using the terms "applicant for admission" and "seeking admission" interchangeably. *See* ECF No. 11 at 1-2. According to the government, all noncitizens who have not been admitted to the United States— i.e., "applicants for admission"—are necessarily "seeking admission" for purposes of section 1225(b)(2)(A). *Id*. Thus, the government contends, section 1225(b)(2)(A) applies to noncitizens who are "applicants for admission." *Id*. at 2.

I find that the government's interpretation violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be

an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondents' theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest

6

when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. 2025) ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases); *E.L.D.M. v. Becerra*, No. 1:25-cv-01906-DJC-JDP, 2025 WL 3707140, at *3 (E.D. Cal. Dec. 22, 2025). The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ." 583 U.S. at 289, 297. While the government's interpretation was endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited. *See Loper Bright*, 603 U.S. at 400. Moreover, a district court in this Circuit recently vacated *Matter of Yajure Hurtado* "as contrary to law under the [Administrative Procedure Act]." *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026).

Accordingly, because petitioner was detained in the interior of the United States, I find that his detention is governed by section 1226(a) and not, as respondents argue, by section 1225(b). Given this finding, I must determine whether the appropriate relief is release or a bond hearing. Petitioner requests that he be released. ECF No. 13 at 5. Respondents do not address

the issue. *See* ECF No. 11.

Courts in this Circuit have ordered both forms of relief. Some courts have found that a bond hearing is the proper remedy. *See Rodriguez*, 779 F. Supp. 3d at 1263 ("The Court finds that the specific harm Rodriguez alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Defendants from denying bond on the basis that he is detained under Section 1225(b)(2)."). Other courts have held that release is the proper remedy. *See Feng v. Lyons*, No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) ("Provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right.").

Under the circumstances presented, I find that a bond hearing is proper. The harm suffered by petitioner—not receiving the bond hearing to which he is statutorily entitled—is remedied by a hearing. *See Rodriguez*, 779 F. Supp. 3d at 1263. Moreover, *Feng* is unlike the instant action. In *Feng*, the court found "no indication . . . of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community." *Feng*, 2026 WL 472635, at *1. The same cannot be said here. As noted, petitioner was arrested two months ago for allegedly threatening his ex-wife with a knife, and his ex-wife told police that petitioner previously threatened to kill her. *See* ECF No. 18-2 at 9. As a result, petitioner faces three charges, including felony assault with a deadly weapon. *See id*. at 7.

While this evidence might prove insufficient for the government to carry its burden at the bond hearing, it is sufficient to support the finding that "due process is satisfied if Petitioner is provided with a post-deprivation bond hearing within five days." *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M.*, 2025 WL 2938808, at *15-16).

8

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted.

Accordingly, it is hereby RECOMMENDED that:

1. The first amended petition for writ of habeas corpus, ECF No. 13, be GRANTED.

2. Petitioner (A-Number: 201-678-151) be provided a bond hearing within five days of the date of the court's order. At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondents be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4. Petitioner's motion to expedite, ECF No. 18, be DENIED as moot.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    March 16, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

9